FILED
2024 Apr-11  AM 09:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | ) **No.: 2:23-CR-394-MHH-JHE** |
| | ) |
| **COURDARIUS LAMONT HALL** | ) |
| *also known as "Skinny"* | ) |

## PLEA AGREEMENT

The Government and the defendant, **COURDARIUS LAMONT HALL**, hereby acknowledge the following plea agreement in this case:

## PLEA

The defendant agrees to (i) plead guilty to **COUNTS ONE, TWO, THREE, FOUR,** and **FIVE** of the Indictment filed in the above-numbered and -captioned matter; (ii) consent to forfeiture as described in section XII below; (iii), pay restitution as determined by the Court, if applicable; and (iv) waive certain rights to direct appeal and collateral attack as outlined in section **IV** of this agreement.  With respect to **COUNT FIVE**, the defendant specifically pleads guilty in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).   In exchange, the United States Attorney, acting on behalf of the Government and through the undersigned Assistant United States Attorney, agrees to dismiss **COUNT SIX** at the time of

Defendant's Initials _C.H___

sentencing and recommend the disposition specified below, subject to the conditions in section **VII**.

**TERMS OF THE AGREEMENT**

## I.    MAXIMUM PUNISHMENT

The defendant understands that the maximum statutory punishment that may be imposed for **COUNT ONE,** Distribution of Methamphetamine and Fentanyl, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B), and (b)(1)(C), as charged in **COUNT ONE**, is:

A. Imprisonment for not less than 5 years and not more than 40 years;

B. A fine of not more than $5,000,000, or,

C. Both A and B;

D. Supervised release of not less than 4 years; and

E. A special assessment of $100.

The defendant understands that the maximum statutory punishment that may be imposed for **COUNT TWO,** Distribution of Methamphetamine and Fentanyl, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B), and (b)(1)(C), as charged in **COUNT TWO**, is:

A. Imprisonment for not less than 5 years and not more than 40 years;

B. A fine of not more than $5,000,000, or,

C. Both A and B;

Defendant's Initials _CH_

**D.**     Supervised release of not less than 4 years; and

**E.**     A special assessment of $100.

The defendant understands that the maximum statutory punishment that may be imposed for **COUNT THREE,** Distribution of Methamphetamine and Fentanyl, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B), and (b)(1)(C), as charged in **COUNT THREE,** is:

**A.**     Imprisonment for not less than 5 years and not more than 40 years;

**B.**     A fine of not more than $5,000,000, or,

**C.**     Both A and B;

**D.**     Supervised release of not less than 4 years; and

**E.**     A special assessment of $100.

The defendant understands that the maximum statutory punishment that may be imposed for **COUNT FOUR**, Possession with Intent to Distribute Methamphetamine and Fentanyl, in violation of Title 21, United States Code, Section 841(a)(1), and (b)(1)(A), as charged in **COUNT FOUR**, is:

**A.**     Imprisonment for not less than 10 years and not more than Life;

**B.**     A fine of not more than $10,000,000, or,

**C.**     Both A and B;

**D.**     Supervised release of not less than 5 years; and

**E.**     A special assessment of $100.

Defendant's Initials _CH_

The defendant understands that the maximum statutory punishment that may be imposed for **COUNT FIVE,** Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i), as charged in **COUNT FIVE**, is:

**A.**    Imprisonment for not less than 5 years and not more than life, may not be probated or run concurrently with any other sentence;

**B.**    A fine of not more than $250,000, or,

**C.**    Both A and B;

**D.**    Supervised release of not more than 5 years; and

**E.**    A special assessment of $100.

## II.    FACTUAL BASIS FOR PLEA

The Government is prepared to prove, at a minimum, the following facts at the trial of this case:

On April 27, 2023, agents with the Jefferson County Sheriff's Office (JCSO) Vice and Narcotics Division met with a reliable confidential source (CS), who stated that he/she could purchase methamphetamine and fentanyl from a black male known to the CS as "Skinny." The CS stated that the transaction would likely take place at the apartments located at 3009 Avenue West in Birmingham. The CS contacted "Skinny" via telephone, and "Skinny" told the CS to come to 20th Street, which the

CS knew to be 3009 Avenue West in Birmingham. JCSO deputies searched the CS and the CS' vehicle for contraband and weapons, finding none. They equipped the CS with an audio and video recording device and provided the CS with $240 in county funds to conduct the transaction. The CS arranged with "Skinny" to purchase 1 gram of fentanyl and 28 grams of methamphetamine.

Deputies established surveillance at 3009 Avenue West, and other deputies surveilled the CS driving to that location. The CS parked his/her vehicle and deputies saw a red Chrysler 300 arrive at 3009 Avenue West and park next to the CS's vehicle. The CS gave "Skinny" the money and "Skinny" gave the CS the methamphetamine and fentanyl. Agents surveilled the CS back to a predetermined meeting location, searched and debriefed him/her, and recovered the methamphetamine and fentanyl. JCSO deputies took the methamphetamine and fentanyl back to their headquarters where they weighed it, tested it on the TruNarc test kid, packaged it into evidence, and placed it into a secure locker. Detectives ran the tag number they saw on the red Chrysler 300 through law enforcement databases, and it came back as registered to Courdarius Lamont HALL. Detectives were able to identify "Skinny" as HALL based on their observations of him during the buy and his driver's license photograph.

On May 17, 2023, JCSO deputies again met with a reliable CS, who stated that he/she could purchase methamphetamine and fentanyl from "Skinny." The CS

stated that the transaction should occur either at 3009 Avenue W or the Greensprings area. The CS contacted "Skinny" by telephone and "Skinny" told the CS to come to Greensprings, which the CS knew to mean the Adona Apartments at 705 Stoneridge Road in Birmingham. JCSO deputies searched the CS and the CS' vehicle for contraband and weapons, finding none. They equipped the CS with an audio and video recording device and provided the CS with $280 in county funds to conduct the transaction.

Some deputies established surveillance at 705 Stoneridge Road, and other deputies surveilled the CS driving to that location. The CS parked his/her vehicle and deputies saw the same red Chrysler 300 arrive and park next to the CS's vehicle. The CS gave "Skinny" the money and "Skinny" gave the CS the methamphetamine and fentanyl. Agents surveilled the CS back to a predetermined meeting location, searched and debriefed him/her, and recovered the methamphetamine and fentanyl. JCSO deputies took the methamphetamine and fentanyl back to their headquarters where they weighed it, tested it on the TruNarc test kit, packaged it into evidence, and placed it into a secure locker. Deputies showed the CS a six-person lineup, and the CS immediately recognized "Skinny" as Courdarius HALL.

On May 24, 2023, JCSO deputies again met with a reliable CS, who stated that he/she could purchase methamphetamine and fentanyl from "Skinny." The CS stated that the transaction should occur either at 3009 Avenue W or the Greensprings

area. The CS contacted "Skinny" by telephone and "Skinny" told the CS to come to 20th Street, which the CS knew to mean 3009 Avenue W. JCSO deputies searched the CS and the CS' vehicle for contraband and weapons, finding none. They equipped the CS with an audio and video recording device and provided the CS with $280 in county funds to conduct the transaction.

Deputies established surveillance at 3009 Avenue W, and other deputies surveilled the CS driving to that location. The CS parked his/her vehicle, but "Skinny" called the CS and told him/her to come to 1804 Princeton Avenue in Birmingham. The CS, surveilled by agents, drove to 1804 Princeton Avenue. Deputies saw the same red Chrysler 300 arrive and park next to the CS's vehicle. The CS gave "Skinny" the money and "Skinny" gave the CS the methamphetamine and fentanyl. Agents surveilled the CS back to a predetermined meeting location, searched and debriefed him/her, and recovered the methamphetamine and fentanyl. JCSO deputies took the methamphetamine and fentanyl back to their headquarters where they weighed it, tested it on the TruNarc test kit, packaged it into evidence, and placed it into a secure locker.

Agents were able to identify HALL's residence as 1713 51st Street Ensley in Birmingham, Alabama. Deputies drove by the residence and observed the same red Chrysler 300 (tag number 1A063CR) that HALL drove to conduce the prior three drug transactions, parked in the driveway, next to a gray Chevrolet Impala.

Defendant's Initials _CH_

On May 25, 2023, JCSO Detective Stewart applied for and obtained two State of Alabama search warrants: one, to search the red Chrysler (tag number 1A063CR), and one to search the person of HALL and his residence located at 1713 51st Ensley, Alabama.

JCSO Deputies executed the warrants the same day. Upon conducting pre-execution surveillance, deputies observed HALL walk to the Chrysler 300 and open the passenger door. They approached the residence and detained HALL walking away from the Chrysler. They seized a white Apple iPhone from his pocket. His 3-year-old daughter was standing on the front porch. Deputies contacted HALL'S sister, who came to take custody of the child. Deputies executed the search warrants and located the following items.

From inside the residence, they found a Draco .223 caliber firearm, with serial number DB6921 underneath the mattress in the master bedroom. They found a Glock .40 caliber SN SDK683 in the master bedroom closet shelf next to a large sum of money sitting on top of a box, later counted to be $5,730. Upon inspecting the Glock, it appeared to have a machinegun conversion device, commonly referred to as a "switch," making it fully automatic.





Defendant's Initials _CH_



There was also $9,605 inside a jacket pocket in the master bedroom closet. Deputies also found two "flip" phones, an Android phone, mail with HALL's name on it, digital scales, assorted ammunition, and a Heritage Arms .22 Magnum Revolver.

Upon searching the car, deputies found a Minnie Mouse backpack in the rear passenger seat containing what appeared to be methamphetamine and fentanyl in it. On the floorboard below that backpack, deputies found a drum magazine with ammunition. In the center console, deputies found $927. In the driver's side door and passenger side door pocket, they found ammunition.





Defendant's Initials _CH_



JCSO submitted all of the above evidence to agents with the Federal Bureau of Investigation, who transported it to the FBI-Birmingham office to be processed, secured, and stored.  FBI agents sent the drug evidence to the Drug Enforcement Administration Southeast Laboratory in Miami Florida.  Agents labeled each item of evidence.  The labels, description, and laboratory results are as follows:

- Exhibit 1B13- methamphetamine from the April 27, 2023, distribution. Laboratory results confirmed this substance to be 27.16 grams of pure methamphetamine.

Defendant's Initials *CH*

- Exhibit 1B12- fentanyl from the April 27, 2023, distribution. Laboratory results confirmed this substance to be 0.877 grams of fentanyl.

- Exhibit 1B1 – methamphetamine from the May 17, 2023, distribution. Laboratory results confirmed this substance to be 26.5 grams of pure methamphetamine.

- Exhibit 1B2- fentanyl from the May 17, 2023, distribution. Laboratory results confirmed this substance to be 0.968 grams of fentanyl.

- Exhibit 1B3- fentanyl from the May 24, 2023, distribution. Laboratory results confirmed this substance to be 0.903 grams of fentanyl.

- Exhibit 1B4- methamphetamine from the May 24, 2023, distribution. Laboratory results confirmed this substance to be 26.9 grams of pure methamphetamine.

- Exhibit 1B5- fentanyl from the May 25, 2023, search warrant execution, found inside the Minnie Mouse bag in the red Chrysler 300. Laboratory results confirmed this substance to be 17.3 grams of fentanyl.

- Exhibit 1B6- methamphetamine from the May 25, 2023, search warrant execution, found inside the Minnie Mouse bag in the red Chrysler 300.

Defendant's Initials _CH_

Laboratory results confirmed this substance to be 315.7 grams of pure methamphetamine.

FBI agents submitted the three firearms to the Bureau of Alcohol, Tobacco, and Firearms (ATF) for testing.  The ATF conducted a trace summary on each of the three firearms.

During the execution of the search warrant, JCSO deputies talked to HALL after he was detained. They advised him of his *Miranda* rights, which he waived. They asked HALL about what they called the "diaper bag," referring to the Minnie Mouse bag found in his car.  HALL stated it was "ice" and that he had a gun in the house. He said there is a gun at the top of the closet and admitted that he knew it had a "switch" on it.  HALL said he had never fired the weapon and that somebody put it on there for him.  When asked why, he seemed to indicate because other people have them.  The deputy said, "you just wanted a fully automatic gun?" and HALL replied, "yea fully automatic." He said, "I know the consequences of it."

**The defendant hereby stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the defendant's sentence.  The defendant further acknowledges that these facts do not constitute all of the evidence of each and every act that the defendant and/or any co-conspirators may have committed.**

Courdarius Hall

_____
**COURDARIUS LAMONT HALL**

## III.     RECOMMENDED SENTENCE

Defendant's Initials  CH

Subject to the limitations in section **VII** regarding subsequent conduct and pursuant to Fed. R. Crim. P. 11(c)(1)(B), the Government will recommend the following disposition:

A.   That the defendant be awarded a two (2) level reduction in the defendant's adjusted offense level, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the defendant's criminal conduct. The Government agrees to make a motion pursuant to USSG §3E1.1(b) for an additional one-level decrease in recognition of the defendant's prompt notification to the Government of the intention to enter a plea of guilty. The Government may oppose any adjustment for acceptance of responsibility if the defendant: (1) fails to admit each and every item in the factual stipulation; (2) denies involvement in the offense; (3) gives conflicting statements about the defendant's involvement in the offense; (4) is untruthful with the Court, the Government, or the United States Probation Officer; (5) obstructs or attempts to obstruct justice prior to sentencing; (6) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (7) attempts to withdraw the defendant's plea of guilty for any reason other than those expressly enumerated in the "Waiver of Right to Appeal and Post-Conviction Relief" section of this Plea Agreement;

B.   That the defendant be remanded to the custody of the Bureau of Prisons and incarcerated for a term consistent within the advisory United States Sentencing Guideline range as calculated by the Court at the time of sentencing;

C.   That following the said term of imprisonment, the defendant be placed on supervised release for a period to be determined by the Court, subject to the Court's standard conditions of supervised release ;

D.   That the defendant be required to pay restitution to all the victims of the defendant's crimes.

E.   That the defendant be required to pay a fine in accordance with the sentencing guidelines should the Court determine that the defendant has

the ability to pay a fine, said amount due and owing as of the date sentence is pronounced, with any outstanding balance to be paid in full by the expiration of the term of supervised release;

F.     That the defendant be required to comply with the forfeiture provisions set forth in section XII of this agreement; and

G.     That the defendant pay a special assessment of $500, said amount due and owing as of the date sentence is pronounced.

## IV.     WAIVERS

### A.     STATUTE OF LIMITATIONS WAIVER

In consideration of the recommended disposition of this case, I, **COURDARIUS LAMONT HALL**, hereby understand, acknowledge, and agree that if this plea agreement is set aside for any reason, I will not assert any defense based on any applicable statute of limitations or the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*, that includes the passage of time from and including the date of this plea agreement until and including the date of entry of any order setting this plea agreement aside.

### B.     RIGHT TO APPEAL AND POST-CONVICTION RELIEF

In consideration of the recommended disposition of this case, I, **COURDARIUS LAMONT HALL**, hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the Court might impose. Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution,

forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255, and any argument that (1) the statute(s) to which I am pleading guilty is or are unconstitutional or (2) the admitted conduct does not fall within the scope of the statute(s).

The defendant reserves the right to contest in an appeal or post-conviction proceeding(s) the following:

1. Any sentence imposed in excess of the applicable statutory maximum sentence(s);

2. Any sentence imposed in excess of the Guidelines range determined by the Court at the time sentence is imposed; and

3. Ineffective assistance of counsel.

The defendant acknowledges that before giving up these rights, the defendant discussed the United States Sentencing Guidelines and their application to the defendant's case with the defendant's attorney, who explained them to the defendant's satisfaction. The defendant further acknowledges and understands that the Government retains its right to appeal where authorized by statute.

Defendant's Initials CH

**I, COURDARIUS LAMONT HALL,** hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.

*Courdarius Hall*
_____
**COURDARIUS LAMONT HALL**

## V.    UNITED STATES SENTENCING GUIDELINES

The defendant's counsel has explained to the defendant, that in light of the United States Supreme Court's decision in *United States v. Booker*, the federal sentencing guidelines are **advisory** in nature.  Sentencing is in the Court's discretion and is not required to be within the guideline range.  The defendant agrees that, pursuant to this agreement, the Court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range, and the defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

## VI.    AGREEMENT NOT BINDING ON COURT

The defendant fully and completely understands and agrees that it is the Court's duty to impose sentence upon the defendant and that any sentence recommended by the Government is **NOT BINDING UPON THE COURT,** and that the Court is not required to accept the Government's recommendation.  Further, the defendant understands that if the Court does not accept the Government's recommendation, the defendant does not have the right to withdraw the guilty plea.

## VII.    VOIDING OF AGREEMENT

The defendant understands that if the defendant (a) violates any federal, state, or local law or any condition of pretrial release after entering into this plea agreement, (b) moves the Court to accept a plea of guilty in accordance with, or pursuant to, the provisions of *North Carolina v. Alford*, 400 U.S. 25 (1970), (c) tenders a plea of *nolo contendere* to the charges, (d) violates any other term of this plea agreement, and/or (e) does or says anything that is inconsistent with the acceptance of responsibility, the plea agreement will become NULL and VOID at the election of the United States, and the United States will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained herein.  Further, such election will not entitle the defendant to withdraw a previously entered plea.

## VIII.    OTHER DISTRICTS AND JURISDICTIONS

The defendant understands and agrees that this agreement **DOES NOT BIND** any other United States Attorney in any other district, or any other state or local authority.

## IX.    COLLECTION OF FINANCIAL OBLIGATION

In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to:

- fully disclose all assets in which the defendant has any interest or over which

the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party;

- promptly submit a completed financial statement to the United States Attorney's Office, in a form that it provides and as it directs;

- identify all assets over which the defendant exercises or exercised control, directly or indirectly, within the past five years, or in which the defendant has or had during that time any financial interest;

- take all steps as requested by the Government to obtain from any other parties by any lawful means any records of assets owned at any time by the defendant;

- undergo any polygraph examination the Government may choose to administer concerning such assets and to provide and/or consent to the release of the defendant's tax returns for the previous five years.

The defendant further agrees that the above information, as well as any of the defendant's financial statements and disclosures, will be complete, accurate, and truthful. Finally, the defendant expressly authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

## X.   AGREEMENT REGARDING RELEVANT CONDUCT AND RESTITUTION

Defendant's Initials CH

As part of the defendant's plea agreement, the defendant admits to the above facts associated with the charges and relevant conduct for any other acts. The defendant understands and agrees that the relevant conduct contained in the factual basis will be used by the Court to determine the defendant's range of punishment under the advisory sentencing guidelines. The defendant admits that all of the crimes listed in the factual basis are part of the same acts, scheme, and course of conduct. This agreement is not meant, however, to prohibit the United States Probation Office or the Court from considering any other acts and factors, which may constitute or relate to relevant conduct. Additionally, if this agreement contains any provisions providing for the dismissal of any counts, the defendant agrees to pay any appropriate restitution to each of the separate and proximate victims related to those counts should there be any and waives objection to the inclusion of that restitution in any order issued by the Court.

## XI.     TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS

Unless otherwise specified herein, the defendant understands and acknowledges that this agreement does not apply to or in any way limit any pending or prospective proceedings related to the defendant's **tax liabilities**, if any, or to any pending or prospective **forfeiture** or other **civil** or **administrative** proceedings.

## XII.     FORFEITURE

Defendant's Initials *C H*

The defendant agrees to consent to the entry of a final forfeiture judgment against the defendant, pursuant to Fed. R. Crim. P. 32.2(b)(1), of all firearms and ammunition involved in or used in the commission of the offenses in COUNTS FOUR and FIVE of the Indictment, including: a Draco .223 caliber firearm, with serial number DB6921; Glock .40 caliber SN SDK683; a Heritage Arms .22 Magnum Revolver SN M17168, and any accompanying magazines and ammunition. For purposes of entering said order of forfeiture, the defendant acknowledges that a nexus exists between said firearm(s) and the criminal offense(s) to which the defendant is pleading guilty.

The defendant agrees to take all steps as requested by the Government to pass clear title to forfeitable assets to the Government, and to testify truthfully in any judicial forfeiture proceeding. The defendant hereby waives the requirements of Fed. R. Crim. P. 32.2 regarding notice of the forfeiture in the Indictment, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant also waives the requirements of Fed. R. Crim. P. 43(a) with respect to the imposition of any forfeiture sanction carried out in accordance with this plea agreement. The defendant acknowledges that the defendant understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise the defendant of this,

Defendant's Initials C.W

pursuant to Fed. R. Crim. P. 11(b)(1)(J), at the time the defendant's guilty plea is accepted.

The defendant further waives all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including any Double Jeopardy challenges that the defendant may have to the entry of a Forfeiture Order before sentencing, and any claims, defenses or challenges arising under the Excessive Fines Clause of the Eighth Amendment resulting from the forfeiture imposed as a result of this Indictment and/or any pending or completed administrative or civil forfeiture actions based upon the course of conduct that provides the factual basis for the forfeiture.

### Non-Abatement of Criminal Forfeiture

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon the defendant's heirs, successors, and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full. To the extent that forfeiture pursuant to this agreement requires the defendant to disgorge

wrongfully obtained criminal proceeds for the benefit of the defendant's victims, the defendant agrees that the forfeiture is primarily remedial in nature.

## XIII.    IMMIGRATION STATUS

The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States.  Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which the defendant is pleading guilty.  The defendant's guilty plea and conviction make it practically inevitable and a virtual certainty that the defendant will be removed or deported from the United States if the defendant is not a citizen of the United States.  Removal and other immigration consequences are the subject of a separate proceeding, however; and the defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status.  Understanding all of this, the defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that plea may entail, even if the consequence is automatic removal from the United States.

## XIV.    DEFENDANT'S ACKNOWLEDGEMENT

I have read and understand the provisions of this plea agreement consisting of **26** pages.  I have discussed the case and my constitutional and other rights with my lawyer.  I am satisfied with my lawyer's representation in this case.  I understand

that by pleading guilty, I will be waiving and giving up my right to continue to plead

not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront,

cross-examine, or compel the attendance of witnesses, to present evidence on my

behalf, to maintain my privilege against self-incrimination, and to the presumption

of innocence.  I agree to enter my plea as indicated above on the terms and conditions

set forth herein.

> **NO PROMISES OR REPRESENTATIONS OTHER THAN THOSE IN THE AGREEMENT HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**

I further state that I have not had any drugs, medication, or alcohol within the

past 48 hours except as stated here:

_____

I understand that this plea agreement will take effect and will be binding as to

the Parties **only** after all necessary signatures have been affixed hereto.

I have personally and voluntarily placed my initials on every page of this plea

agreement and have signed the signature line below to indicate that I have read,

understand, and approve all of the provisions of this plea agreement, both

individually and as a total binding agreement.

4-9-24
_____
DATE

Courdarius Hall
_____
**COURDARIUS LAMONT HALL**
Defendant

Defendant's Initials _C H_

## XV.    COUNSEL'S ACKNOWLEDGMENT

I have discussed this case with my client in detail and have advised my client of all of my client's rights and all possible defenses.  My client has conveyed to me that my client understands this plea agreement and consents to all its terms.  I believe the plea and disposition set forth herein are appropriate under the facts of this case and are in accord with my best judgment.  I concur in the entry of the plea agreement on the terms and conditions set forth herein.

4/9/24
DATE

**James Gibson**
Defendant's Counsel

## XVI.    GOVERNMENT'S ACKNOWLEDGMENT

I have reviewed this matter and this plea agreement and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

Prim F. Escalona
United States Attorney

4/10/24
DATE

**Brittany T. Byrd**
Assistant United States Attorney

Defendant's Initial, CH